UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAFISA OSMAN IBRAHIM,

Plaintiff,

v.

USCIS,

Defendant.

Case No. 10-14520
Honorable Julian Abele Cook, Jr.

ORDER

In this case, the Plaintiff, Nafisa Osman Ibrahim, seeks an order compelling the Defendant, the United States Citizenship and Immigration Services (USCIS),[1] to take action on her application for naturalization, Form N-400. Currently before the Court is a motion by USCIS to dismiss the complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), or, in the alternative, for failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6).

I.

Ibrahim filed a Form N-400, Application for Naturalization, on January 5, 2006, at the USCIS Nebraska Service Center ("NSC"). Shortly thereafter, she completed a fingerprint check and was notified that she was scheduled for an interview on May 31, 2006. However, approximately two weeks before the scheduled interview, she received notice that the interview was canceled due to unforeseen circumstances. Despite several attempts to follow up on the status of her case, no new interview date has been set and, as of the filing of her complaint, no progress had been made on her application.

---

[1]The USCIS is the agency under the Department of Homeland Security that is charged with adjudicating applications for naturalization.

According to the USCIS, rather than being transferred to the USCIS Detroit District Office per usual protocol, her file was mis-routed to a different office and was not updated in the USCIS file tracking system. On June 5, 2008, her file was deemed lost by the NSC. In January 2011 - two months after Ibrahim filed her complaint - the file was received by the USCIS Detroit office and properly updated in the file tracking system. The USCIS states that it completed the following steps of the required background check: (1) it completed her fingerprint check in March 2006; (2) it submitted her name check to the Federal Bureau of Investigation ("FBI") on January 18, 2006, from which results were received on August 9, 2006; and (3) it checked her name against the Department of Homeland Security's Interagency Border Inspection System ("IBIS"). Because the results of all of these checks have expired, these steps will have to be repeated and, depending upon the results, may require further action. Finally, according to the USCIS, now that Ibrahim's file has been received by the Detroit office, it is moving forward with the adjudication of her application and will schedule her for an interview after the required security checks are complete.

II.

"Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). If the attack on jurisdiction is a facial attack on the complaint - that is, if it is a challenge to sufficiency of the pleading itself - the court must accept the allegations in the complaint as true and construe them in a light most favorable to the non-moving party. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). If the attack challenges the factual existence of subject matter jurisdiction, however, the presumption of truthfulness does not apply, and the court may

look to evidence outside the pleadings and resolve factual disputes. *Id.*; *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Here, where the USCIS challenges the factual existence of subject matter jurisdiction, the attack is factual.

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court must accept the plaintiff's well-pleaded allegations as true and construe each of them in a light that is most favorable to it. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

III.

The complaint does not contain any jurisdictional averments, and the date by which Ibrahim was to respond to the pending motion, April 22, 2011, passed without any response having been filed. Nevertheless, the Court is cognizant of the Ibrahim's status as a pro se litigant and of its

obligation to construe these pleadings liberally and to hold them to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Moreover, the Court is aware that several district courts, including this one, have ruled on substantially identical motions to dismiss substantially identical complaints. In all of those, the bases for jurisdiction considered were: (1) the Immigration and Nationality Act ("INA"), 8 U.S.C. 1447(b); (2) the Mandamus and Venue Act ("Mandamus Act"), 28 U.SC. § 1361; and (3) the federal question statute, 28 U.S.C. § 1331, in connection with the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555 and 701 et seq.[2] The Court will consider each of these possible jurisdictional bases in turn.

The naturalization process begins with the filing of a Form N-400 with the USCIS. 8 C.F.R. § 334.2(a). The examination and investigation process is prescribed by 8 U.S.C. § 1446 and the associated regulations. One step requires the applicant to "appear in person before a [USCIS] officer" for an "examination." 8 C.F.R. § 335.2(a). However, the USCIS is prohibited from scheduling the examination until after it "has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." *Id.* § 335.2(b).

While the statute[3] and the regulations[4] that prescribe the naturalization process do not specify a time frame within which it must be completed, 8 U.S.C. § 1447(b) provides for federal district court jurisdiction over a suit seeking to compel adjudication of an application for

---

[2]Although Ibrahim did not allege any jurisdictional basis in her complaint, the USCIS, in its motion to dismiss, addressed each of these three possible bases.

[3]8 U.S.C. § 1446(a)

[4]*See, e.g.*, 8 C.F.R. § 335.1

naturalization after one hundred twenty (120) days have elapsed following the "examination" of the applicant. Courts in the Eastern District of Michigan, as elsewhere, have ruled that the "examination" contemplated by § 1447(b) is the in-person interview of the applicant. *See, e.g.*, *Dukhow v. USCIS*, 542 F. Supp. 2d 673, 675 (E.D. Mich. 2008) (listing cases). Because Ibrahim has not yet been interviewed, the 120-day provision of § 1447(b) has not been triggered. *See Ivakin v. Hansen*, No. 5:07CV3227, 2008 WL 5725580, at *2 (N.D. Ohio Aug. 12, 2008) (recognizing that jurisdiction under § 1447(b) cannot exist where the plaintiff had not yet been interviewed); *Hokan v. Chertoff*, No. 07-12918 (E.D. Mich. Dec. 20, 2007) (same). Thus, the USCIS argues - and the Court agrees - that the Court does not have jurisdiction under § 1447(b) to adjudicate or to compel adjudication of Ibrahim's application for naturalization.

The USCIS next argues that jurisdiction is not proper under either the Mandamus Act or the APA because, "[w]here Congress has provided an adequate procedure to obtain judicial review of agency action, that statutory provision is the exclusive means of obtaining judicial review in those situations to which it applies." *Memphis Trust Co. v. Bd. of Governors of Fed. Reserve Sys.*, 584 F.2d 921 (6th Cir. 1978). Because Congress provided such a procedure in § 1447(b), the USCIS contends, that statute provides the only avenue of judicial review available to Ibrahim. However, having established that a pre-interview applicant cannot avail herself of § 1447's judicial review procedure, the Court concludes that her circumstances do not bring this case within the realm of "those situations to which [§ 1447(b)] applies." Therefore, the specific grant of jurisdiction to differently-situated applicants does not deprive Ibrahim of alternative means of obtaining judicial review. *See Hanbali v. Chertoff*, No. 3:07CV-50-H, 2007 WL 2407232, at *3 (W.D. Ky. Aug. 17, 2007) ("There are ample administrative and judicial remedies should [plaintiff's] application be

denied. However, there is no alternative remedy for an unreasonable delay. Plaintiff's only means of compelling agency action in the case of an unreasonable delay is through an order of a district court.").

The USCIS next argues that Ibrahim cannot establish that jurisdiction is proper under the Mandamus Act, 28 U.S.C. § 1361. That statute provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A writ of mandamus is an "extraordinary remedy [that] will issue only to compel the performance of a clear nondiscretionary duty." *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (citation and internal quotation marks omitted). To establish entitlement to a writ of mandamus, a plaintiff must demonstrate that "(1) [she has] a clear and certain claim to the relief sought; (2) the defendants have a nondiscretionary, ministerial duty to act so plainly prescribed as to be free from doubt; and (3) there is no other adequate remedy available." *Hani v. Gonzales*, No. 3:07-CV-517-S, 2008 WL 2026092, at *3 (W.D. Ky. May 8, 2008) (citations and internal quotation marks omitted).

As an initial matter, the Court notes that several district courts, citing *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction."), have held that consideration of the merits of the claim - that is, whether the requisite factors are established - should be a separate and distinct analysis from the question of jurisdiction. *E.g.*, *Ali v. Frazier*, 575 F. Supp. 2d 1084, 1088-89 (D. Minn. 2008) (rejecting government's claim that plaintiff's inability to establish these three prerequisites deprived district court of APA or mandamus jurisdiction because "whether a plaintiff is *entitled to relief* is a separate question from whether a court has

jurisdiction to *decide* whether a plaintiff is entitled to relief"); *Sawan v. Chertoff*, 589 F. Supp. 2d 817, 823-24 (S.D. Tex. 2008) (citation and internal quotation marks omitted) ("A conclusion that any one of those prerequisites is missing should lead the district court to deny the petition, not because it now realizes that it had no power to be thinking about the case in the first place, but because the plaintiff has not demonstrated an entitlement to this form of extraordinary relief."). However, the Sixth Circuit has expressly held that "[t]he existence of jurisdiction under section 1361 is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987); *see also Ivakin*, 2008 WL 5725580, at *3 (applying *Maczko* in determining that court lacked subject matter jurisdiction under either the Mandamus Act or the APA to adjudicate an N-400 naturalization application where the applicant had not yet been interviewed). Because the jurisdictional statute itself requires that the plaintiff demonstrate that the defendant owes a duty to her, the jurisdiction and merits inquiries overlap, at least with respect to the second prong of the latter.

The Court's inquiry need not progress beyond the second prong because Ibrahim cannot demonstrate that the USCIS owed her a duty to conduct her interview within any particular time frame. The only relevant time frame specified in the statute is the 120-day period that must elapse after the interview before the district courts obtain jurisdiction, but, as noted above, that period does not begin running until after the interview. Ibrahim can point to no authority establishing a time frame for the process up to and including the interview. Thus, mandamus jurisdiction will not lie

under these circumstances.[5] *See Hani*, 2008 WL 2026092, at *3 (non-interviewed plaintiffs could not show that USCIS had non-discretionary duty to act on naturalization application prior to conducting interviews).

For similar reasons, the Court lacks jurisdiction under the federal question statute in conjunction with the APA. The APA requires that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it," 5 U.S.C. § 555(b), and empowers a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1). To establish jurisdiction under the APA, "a plaintiff must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty." *Hani*, 2008 WL 2026092, at *3 (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-65 (2004)).

---

[5]In many of the similar cases in this and other districts, courts have found additional support for this conclusion in noting that the USCIS not only did not have a duty to adjudicate an application until after the interview occurred, but in fact was prohibited from scheduling the interview until after the criminal background check was completed. *See* Public Law No. 05-119, Title I, Nov. 26, 1997, 111 Stat. 2448 ("[N]one of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed . . . ."); *see also* 8 C.F.R. § 335.2(b)8 C.F.R. 335.2(b) (emphasis added) ("The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application *only after* the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed."). However, although it is not entirely clear from the pleadings, it appears that, in this case, all of the criminal background steps were completed in 2006. Thus, this additional line of reasoning would arguably not be implicated on these facts, as, with the completion of the background check, the USCIS was in no way prohibited from processing Ibrahim's application. On the other hand, the results of the 2006 checks have apparently all expired, so even if the lifting of the background check bar had imposed a duty on the USCIS, it would appear that that bar has since been re-imposed, as the USCIS is once again in the position of awaiting background check results.

However, as discussed above, Ibrahim cannot establish that the USCIS had a nondiscretionary duty to adjudicate her application in any particular time period, at least until the criminal background check is completed. *See Hani*, 2008 WL 2026092, at *3; *Sinha v. Upchurch*, No. 1:07 CV 2274, 2007 WL 4322225, at *4 (N.D. Ohio Dec. 7, 2007) ("[W]hile the CIS Defendants may have a duty to act on an application for naturalization within a reasonable time, the time period does not commence until after the [USCIS] receive[s] a completed background check. Any other conclusion would require the [USCIS] to take action that is contrary to law.").

The Court recognizes Ibrahim's entirely understandable frustration at the extraordinary amount of time that her application has languished, through absolutely no fault of her own, in the hands of the USCIS. The USCIS has forthrightly acknowledged that Ibrahim has properly done everything required of her and that the lengthy delay cannot be attributed to any action she took or failed to take. Nevertheless, there is no evidence before the Court that it is within the authority of the USCIS to either (1) expedite the background investigation performed by other federal agencies under these circumstances or (2) schedule Ibrahim for an interview before that investigation is complete. Therefore, the Court - with considerable reluctance - concludes that it lacks jurisdiction to consider Ibrahim's claim

IV.

For the reasons that have been set forth above, the motion by the USCIS to dismiss the complaint for lack of subject matter jurisdiction is granted.

IT IS SO ORDERED.

Dated: August 5, 2011
Detroit, Michigan

s/Julian Abele Cook, Jr.
JULIAN ABELE COOK, JR.
United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses and First Class U.S. mail to the non-ECF participant Nafisa Ibrahim on August 5, 2011:

**Nafisa Osman Ibrahim**
7854 Ternes Street
Deaborn, MI 48126

s/ Kay Doaks
Case Manager